## THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

SANGEETA JOSHI, NP
JERILYN MCDERMED, NP

                          Plaintiffs,          Case No.   _____

v.


GERIATRIC INTERNAL MEDICINE
SPECIALISTS, PA,

And

DR. LOUAY K. SABIH

SERVE:  Louay K. Sabih, M.D.
            10511 Mission Road, Unit 201
            Leawood, KS 66206

                          Defendants.

## COMPLAINT

Plaintiffs, Sangeeta Joshi, NP and Jerilyn McDermed NP ("Joshi and McDermed") set forth their claims for violations of the Kansas Wage Payment Act, K.S.A. § 44-313 ("KWPA"), *et. seq.*, the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h), and under the common law for the State of Kansas against Defendants Geriatric Internal Medicine Specialists PA ("GIMS") and Louay K. Sabih, M.D. as follows:

### NATURE OF THE CLAIMS

1.      This action  for legal and equitable relief arises under the KWPA, the FCA, and the common law for the state of Kansas.

2.      From November 23, 2015 until April 12, 2020, Plaintiff Sangeeta Joshi, NP worked for Defendant as nurse practitioner.

3.      From November 19, 2018 until April 15, 2020, Plaintiff, Jerilyn McDermed, NP worked for Defendant as nurse practitioner.

4.      Both plaintiffs had employment contracts that entitled them to a certain percentage of the receipts the practice collected on the patients they treated.

5.      Defendants discharged Plaintiff Joshi on April 12, 2020 and withheld her final paycheck.

6.      Defendants discharged Plaintiff Joshi in retaliation for reporting wrongful and illegal actions taken by Dr. Sabih.

7.      Plaintiff McDermed resigned on April 15, 2020 and did not receive her final paycheck.

8.      Both plaintiffs inquired about receiving their final paychecks and were told they were not entitled to final payment.

9.      Defendants also failed to pay both plaintiffs the proper percentage of their collections in compliance with their contracts.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 and § 1343, which provides original jurisdiction in this Court for suits arising under federal law. To the extent that this action involves claims under the anti-retaliation provision of the Federal False Claims Act, this Court also has jurisdiction under 31 U.S.C. § 3730 and § 3732(a).

11.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b) over Plaintiffs' claims arising under state law because they arise out of the same set of operative facts as Plaintiffs' claim under federal law.

2

12.     The court has personal jurisdiction over Defendant GIMS because it conducts business in this District and is a registered entity in the State of Kansas.

13.     The court has personal jurisdiction over Defendant Dr. Sabih because he resides in this District and conducts business in Johnson County, Kansas.

14.     Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(b)(2), because the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

15.     Plaintiff Sangeeta Joshi was, at all times relevant to this lawsuit,  a nurse practitioner licensed in the State of Kansas and a resident of Jackson County, Missouri.

16.     Plaintiff Jerilyn McDermed was, at all times relevant to this lawsuit,  a nurse practitioner licensed in the State of Kansas and a resident of Jackson County, Missouri.

17.     Defendant GIMS, a medical practice, is a professional association registered in the state of Kansas, and which contracts with Medicare, Medicaid, and private insurers.

18.     Defendant Dr. Louay K. Sabih is a physician and is the sole owner of GIMS. In that capacity, he exercises ownership and control over the operations of Defendant GIMS. In particular, Dr. Sabih has the ability to control, and does control, compensation policies and decisions on behalf of Defendant GIMS. Dr. Sabih also retains and exercises authority to control the nature and structure of the employment relationship and gives direct instructions to office personnel. Dr. Sabih retains authority to hire and fire employees.

## THE FEDERAL-STATE MEDICAID PROGRAM

19.     The Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396v (hereinafter "Medicaid"), is a Health Insurance Program administered by the Government

of the United States and the various individual States (and territories) and is funded by State and Federal taxpayer revenue. In Kansas, Medicaid funding has remained 41.36% state-funded and 58.64% federally funded throughout Federal Fiscal Year 2020. The Medicaid Program is overseen by the United States Department of Health and Human Services through the Centers for Medicare and Medicaid Services ("CMS"), and is administered at the State level in Kansas through Kansas' Department of Health and Environment's Division of Healthcare Finance and the State's contracted  Managed Care Organizations comprising KanCare. Medicaid was designed to assist participating states in providing medical services, durable medical equipment and prescription drugs to financially needy individuals who qualify for Medicaid.

## FEDERAL AND STATE FALSE CLAIMS ACTS
## AND ANTI-RETALIATION PROVISIONS

20.     The Federal False Claims Act ("FCA"), 31 U.S.C. §3729(a)(1)(A) makes "knowingly" presenting or causing to be presented any false or fraudulent claim for payment to the United States a violation of Federal law.

21.     The Federal FCA, 31 U.S.C. §3729(a)(1)(B) makes "knowingly" making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim in order to get a false or fraudulent claim paid or approved by the Government a violation of Federal law.

22.     The Federal FCA defines a "claim" to include any request or demand, whether under contract or otherwise, for money or property, whether or not the United States has title to the money or property, which is presented to an officer, employee or agent of the United States; or which is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States provides or has provided any portion of the money or property which is

requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

23.     The Anti-Retaliation Provision of the Federal FCA 31 U.S.C. §3730(h), makes it unlawful to discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the FCA or other efforts to stop one or more violations of the Federal FCA. Statutory relief under this provision entitles the employee to all relief necessary to make the employee whole and expressly includes reinstatement with the same seniority status, benefits and salary which that employee would have had but for the discrimination, or front pay in the alternative; 2 times the amount of back pay; interest on the back pay; litigation costs and reasonable attorneys' fees, and compensation for special damages sustained as a result of the discrimination, which has been held to also include emotional distress.

24.     The Anti-Retaliation provision of the Kansas False Claims Act, K.S.A. §75-7506, makes it unlawful to discharge, demote, suspend, threaten, harass or in any other manner retaliate against an employee in the terms and conditions of employment by such employee's employer because of lawful acts undertaken in good faith by the employee in furtherance of an action under the Act, including investigation for, initiation of, or assistance in an action filed or to be filed under the Act.

25.     The Kansas False Claims Act declares that provisions of the Act are not exclusive and the remedies provided for in the Act are to be in addition to remedies provided for in any other law or available under common law, and that the Act shall be liberally construed and applied to promote the public interest

## FACTUAL STATEMENT

26.     Defendants GIMS employed Plaintiff Joshi pursuant to an employment contract starting on or about November 23, 2015 and ending with Joshi's termination on or about April 10, 2020.

27.     Defendants GIMS employed Plaintiff McDermed pursuant to an employment contract starting on or about November 19, 2018 and ending with McDermed's resignation on or about April 15, 2020.

28.     The employment contract between Plaintiff Joshi initially stated that Joshi's salary would be "50 % of the revenue received for services provided to patients by Joshi."  (See Exhibit A, Schedule I, Joshi employment contract).

29.     On August 1, 2018, Plaintiff Joshi and Defendant executed an amendment to Schedule I, which provided that Plaintiff Joshi would be paid "45% of the revenue that is received by GIMS for services provided to patients by the employee."   (Exhibit B, Joshi contract, Schedule I, amended)

30.     The employment contract between Plaintiff McDermed and Defendant stated that after her first year of employment, Plaintiff McDermed "will be paid 45% of the revenue that is received by GIMS for services provided to patients by the employee (production base)"  (See Exhibit C, Schedule I, McDermed employment contract).

31.     Dr. Sabih purported to calculate pay for both plaintiffs based on receipts from the preceding quarter for patients each plaintiff had seen. Thus, for example, receipts from the first quarter would drive the amount of pay in the second quarter, so that plaintiffs would receive a percentage of amounts actually received, rather than a percentage of amounts expected.

32.     Both plaintiffs' contracts contained a provision stating, "Employee will not receive *any* further compensation after the termination of her employment with GIMS" (emphasis in original).

33.     Such a practice (i.e., paying based on collections received rather than expected collections) was consistent with the language of the employment contract, which specified that each plaintiff would receive a percentage of the "revenue that is received."

34.     In general, throughout each plaintiff's tenure, when Sabih visited a facility and saw patients Plaintiffs had seen and for whom Plaintiffs had already written extensive notes, he told Plaintiffs he would split their percentage of the revenue so that he received half of Plaintiffs' percentage plus the amount the practice was entitled to receive pursuant to the contract.

35.     On numerous occasions, Sabih wrote generic notes on Plaintiffs' patients without any detail specific to that particular patient, showing no indication that he had actually seen or treated the patient. On many such occasions, Sabih's notes were false, as he had not actually seen or treated the patient, but indicated that he had so that he could reduce his employees' compensation and keep it for himself.

36.     Sabih refused to allow Plaintiffs to view any office records related to their billing productivity and the practice receipts for patients each plaintiff had seen.

37.     In or about late March 2020, Plaintiff Joshi visited and examined an acutely ill patient at Rehabilitation Hospital of Overland Park. She saw the patient daily, on Monday (March 23), Tuesday (March 24), Wednesday (March 25), and Thursday (March 26). On March 27, 2020, the patient was transferred to the University of Kansas Medical Center ("KUMC") for treatment.

38.     When Plaintiff Joshi returned to Rehabilitation Hospital of Overland Park on or about March 30, 2020, she found that defendant Sabih had written notes on the patient's Rehabilitation Hospital of Overland Park chart on March 28 and 29, 2020 even though the patient was at the KUMC.

39.     On information and belief, the patient involved was insured by the Federal-State Medicaid program.

40.     The act of writing notes on a Medicaid patient's record regarding care at a facility where the patient was not being treated on those days violates Kansas law prohibiting the knowing falsification of medical records, and it would also result in false medical records of care for which Medicaid would then be falsely billed.

41.     Any resulting claims to Medicaid for payment would constitute a violation of both Kansas' False Claims Act and the Federal False Claims Act.

42.     Plaintiff Joshi inquired with Dr. Sabih about how he could have written a note on a patient who was not at the facility. Plaintiff Joshi also reported the incident to the Risk Manager at Rehabilitation Hospital of Overland Park.

43.     Shortly thereafter, on or about April 10, 2020, Dr. Sabih told Plaintiff Joshi she could no longer see patients at Rehabilitation Hospital of Overland Park. He refused to provide her with an explanation for his decision.

44.     This change in Plaintiff Joshi's working conditions constituted a violation of the anti-retaliation provision of the Federal False Claims Act by changing the terms and conditions of Plaintiff Joshi's employment after she engaged in the protected activity of inquiring about what she believed in good faith to be a false medical record of care for this Medicaid patient.

45.     Plaintiff Joshi was surprised and upset by Dr. Sabih's decision, but, nevertheless, agreed to go to other hospitals, so long as she did not have to travel north of the river or to Independence.

46.     On or about April 12, 2020, Dr. Sabih, knowing Joshi's geographic limitations, constructively discharged her by telling her she could only go to North Kansas City and Independence hospitals.

47.     This constructive discharge then constituted a second separate violation of the anti-retaliation provision of the Federal False Claims Act against Plaintiff Joshi.

48.     On or about April 15, 2020, Plaintiff McDermed resigned from her position with GIMS to assist with emergency COVID relief efforts.

49.     Neither plaintiff received their final paychecks for work already performed in previous quarters.

50.     Both plaintiffs contacted Sabih to inquire about final paychecks and were told their contracts did not allow for pay after separation.

51.     On information and belief, neither plaintiff received their full contractual entitlement to wages paid on the revenues for the patients they saw.

52.     On information and belief, Sabih regularly accepted payment at the physician level and took half of Plaintiffs' respective entitlement for a patient visit when he also rounded or purported to round on the patient.

## COUNT I : VIOLATION OF THE KWPA
## WRONGFUL WITHHOLDING OF WAGES
## BOTH PLAINTIFFS

53.     At all times material, Plaintiffs were employees of Defendant GIMS and were entitled to the rights, protections, and benefits provided under K.S.A. § 44-313, *et. seq.*

54.     Defendant Dr. Louay K. Sabih is an employer within the meaning of KWPA, K.S.A. § 44-323(b), because he has charge of the affairs of GIMS and knowingly permitted the underpayments.

55.     Defendant GIMS was, at all times relevant to this lawsuit, an employer within the meaning of KWPA, K.S.A. §44-313a.

56.     Defendants violated the KWPA by failing to pay all wages due to Plaintiffs pursuant to the terms of their contracts.

57.     Plaintiffs have therefore been damaged by the amount of the shortfall.

58.     Defendant Dr. Sabih knew or should have known that he failed to pay Plaintiffs appropriately under their contracts.

59.     Defendant Dr. Sabih knew or should have known that he failed to pay Plaintiffs for their final wages after they were terminated or left GIMS.

60.     Plaintiffs are thus entitled to damages in the amount of the shortfall, and damages for the willful nonpayment, pursuant to K.S.A. § 44-315(b), at a rate of 1 percent of the unpaid wages up to an amount equal to 100 percent of the unpaid wages.

        WHEREFORE, Plaintiffs pray for a finding that Defendants violated the KWPA by willfully failing to properly pay Plaintiffs' wages pursuant to the terms of the contract, for recovery of unpaid wages and an equal amount as damages for willful nonpayment, for costs and expenses of this action, for pre- and post-judgment interest as provided by law, and for any such other and further relief this Court deems just and proper.

## COUNT II: BREACH OF CONTRACT
## BOTH PLAINTIFFS

61.     Plaintiff Joshi executed a contract that entitled her to "50 % of the revenue received for services provided to patients by Joshi."  (See Exhibit A, Schedule I, employment contract).

62.     On August 1, 2018, Plaintiff Joshi and Defendant executed an amendment to Schedule I, which provided that Plaintiff Joshi would be paid "45% of the revenue that is received by GIMS for services provided to patients by the employee."

63.     Plaintiff McDermed executed a contract which entitled her to receive 45 percent of the total amount of receipts collected on patients she had seen.

64.     GIMS and Dr. Sabih failed to pay either plaintiff for work they had already done in the quarter preceding their termination and resignation, respectively.

65.     On information and belief, throughout their employment, GIMS and Dr. Sabih also regularly and consistently underpaid Plaintiffs based on the percentage of revenues collected from patients whom they had seen, both because the wage calculations were inaccurate, and because he improperly took part of each plaintiff's entitlement when he saw or purported to see the patient as well.

66.     As a direct result of Defendants' multiple breaches of the employment contract, Plaintiffs have been damaged in the amounts they were entitled to be paid for the quarter preceding their termination/discharge and in the amounts they were underpaid throughout their employment with GIMS.

WHEREFORE, Plaintiffs pray for a finding in their favor on Count II of their Complaint, for an award of compensatory damages, for costs and expenses of this action, for pre- and post-

judgment interest as provided by law, and for any such other and further relief this Court deems just and proper.

## COUNT III: UNJUST ENRICHMENT
## BOTH PLAINTIFFS

67.     Defendants have been unfairly enriched at the expense of Plaintiffs through withholding proper payment for Plaintiffs, both for their final paychecks, and their final accounting of revenues, and by Defendants' failure to pay Plaintiffs properly throughout their employment, pursuant to the terms of their respective contracts.

68.     Defendants' enrichment through improper failure to pay complete wages and through improper withholding of wages would be unjust.

WHEREFORE, Plaintiffs pray for a finding in their favor on Count III of their Complaint, for an award of compensation in the amount by which Defendants have been unjustly enriched, for costs and expenses of this action, for pre- and post-judgment interest as provided by law, and for any such other and further relief this Court deems just and proper.

## COUNT IV: FRAUD
## BOTH PLAINTIFFS

69.     As set forth above, Defendants made false or untrue representations to Plaintiffs as to statements of existing and material facts.

70.     In particular, Defendants' statements in Plaintiffs' contracts that they would be paid 45 percent of the revenue from services they provided was false, in part, because the contracts also provided, to the contrary, that "employee will not receive *any* further compensation after the termination of her employment with GIMS" (emphasis in original). The intent of that sentence, although not made clear at the time the contracts were entered, was that

Defendants did not intend to compensate Plaintiffs for a portion of their work before the termination of their employment with GIMS.

71.      The representation in the contract that Defendants would pay Plaintiffs 45 percent of the revenue from services they provided was also false, in part, because Defendants had a previously existing and ongoing practice of reducing its employees' compensation by 50 percent if Dr. Sabih also saw the patients treated by Defendants nurse practitioners.

72.      The representation in the contract that Defendants would pay Plaintiffs 45 percent of the revenue from services they provided was also false, in part, because Dr. Sabih had a previously existing and ongoing practice of falsely stating he had seen or treated patients he had not seen or treated, and then reducing the employees' compensation by 50 percent.

73.      Defendants knew their representations were false or untrue or made the representations recklessly without knowledge concerning them.

74.      Defendants intentionally made their representations for the purpose of inducing Plaintiffs to act upon them.

75.      Plaintiffs reasonably relied and acted upon the representations made by Defendants.

76.      Plaintiffs sustained damages by relying upon the representations made by Defendants.

77.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered irreparable injury, including past and future pecuniary losses, lost insurance benefits, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life and will continue to suffer the same unless this Court grants the requested relief.

WHEREFORE, Plaintiffs pray for a finding in their favor on Count IV directing Defendants to pay Plaintiffs front pay in lieu of reinstatement, and to make Plaintiffs whole for all earnings and benefits they would have received but for Defendants' unlawful practices and conduct, including, but not limited to wages, vested retirement earnings, insurance, and other lost benefits, award Plaintiffs compensatory damages, and awarding Plaintiffs the costs of this action, prejudgment interest; and granting such additional relief as the Court may deem just and proper.

### COUNT V: UNLAWFUL RETALIATION IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §3730(h) PLAINTIFF JOSHI

78.     As demonstrated above, during her employment with GIMS and Dr. Sabih, Sabih engaged in fraudulent billing practices such as writing notes on patients he had not seen.

79.     The false records GIMS and Dr. Sabih created and maintained were used to support claims to the United States government for payment of federal funds, including Medicare and Medicaid payments on behalf of GIMS patients.

80.     Plaintiff Joshi accurately and in good faith reported to Dr. Sabih and hospital risk management that Sabih had recorded false information in medical records that would be used to make claims for funds from the federal government, including Medicare and Medicaid payments on behalf of GIMS patients. In particular, Plaintiff Joshi reported that Dr. Sabih recorded that he had seen patients when he had not in fact done so.

81.     Plaintiff Joshi's reporting of these actions to Dr. Sabih and to risk management constituted "protected activity" under 31 U.S.C. §3730(h).  Plaintiff's Joshi's report made in good faith and in furtherance of the policy of the False Claims Act.

82.     The anti-retaliation provision in 31 U.S.C. §3730(h) makes it unlawful to discharge, demote, suspend, threaten, harass, or in any other manner discriminate in the terms or

conditions of employment against an employee who has engaged in protected activity to stop one or more violations of the Act.

83.     Defendants were aware Plaintiff Joshi had raised concerns regarding activities constituting potential fraud in Defendants' billing of government healthcare programs.

84.     Defendants violated 31 U.S.C. §3730(h) by changing the terms and conditions of Plaintiff Joshi's employment by prohibiting her working at the Rehabilitation Hospital of Overland Park, Kansas in response to her engaging in protected activity.

85.     Defendants violated 31 U.S.C. §3730(h) again by reassigning Plaintiff Joshi to the only locations to which, as Defendants were aware, she could not travel. Defendants made reporting to those locations a condition of her employment, thus effectively terminating Plaintiff Joshi's employment on April 12, 2020 in retaliation for making the reports described above.

86.     By these actions, Defendants violated the anti-retaliation provisions of the False Claims Act, 31 U.S.C. §3730(h).

87.     Defendant's actions have directly and proximately caused Plaintiff Joshi substantial economic loss, damage to her career and professional reputation, humiliation, mental stress, anxiety, pain, and suffering.

WHEREFORE, Plaintiff Joshi prays for a judgment against Defendants, and requests the Court to enter judgment in her favor for all available damages and relief under 31 U.S.C. §3730(h), including, without limitation, two times back pay plus pre- and post-judgment interest, reinstatement or front pay in lieu of reinstatement, and compensation for any special damages, including emotional distress and punitive damages, and for litigation costs, including attorneys' fees, and for such other relief as the Court deems just and equitable.

## COUNT VI: RETALIATORY DISCHARGE IN VIOLATION OF K.S.A. § 76-7506
## PLAINTIFF JOSHI

88.     As demonstrated above, during her employment with GIMS and Dr. Sabih, Sabih

engaged in fraudulent billing practices such as writing notes on patients he had not seen.

89.     The false records GIMS and Dr. Sabih created and maintained were used to

support claims to the State of Kansas for payment of state funds, including Medicaid payments

on behalf of GIMS patients.

90.     Kansas law prohibits medical providers from making false claims for payment of

state funds or to permit false statements to be used to receive state funds. K.S.A. § 75-7503(a)(1)

and (2).

91.     Kansas law entitles employees to relief if they are discharged in retaliation for

taking legal actions in good faith in furtherance of the Kansas False Claims Act, K.S.A. § 75-

7501, *et seq.*, including good-faith reporting of violations of the Act. K.S.A. § 75-7506.

92.     Plaintiff Joshi accurately and in good faith reported to Dr. Sabih and hospital risk

management that Sabih had recorded false information in medical records that would be used to

make claims for funds from the State of Kansas, including Medicaid payments on behalf of

GIMS patients. In particular, Plaintiff Joshi reported that Dr. Sabih recorded that he had seen

patients when he had not in fact done so.

93.     Plaintiff Joshi's reporting of these actions to Dr. Sabih and to risk management

was undertaken in good faith and in furtherance of the Kansas False Claims Act.

94.     Defendants were aware of Plaintiff Joshi's reports of improper activities.

95.     Defendants reassigned Plaintiff Joshi to the only locations to which, as

Defendants were aware, she could not travel. Defendants made reporting to those locations a

condition of her employment, thus effectively terminating Plaintiff Joshi's employment on April 12, 2020 in retaliation for making the reports described above.

96.     Defendant's actions have directly and proximately caused Plaintiff Joshi substantial economic loss, damage to her career and professional reputation, humiliation, mental stress, anxiety, pain, and suffering.

WHEREFORE, Plaintiff Joshi prays for a finding in her favor on Count VI of her Complaint against the Defendants for an award of damages, including back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life; and for such other relief as the Court may deem just and equitable.

## COUNT VII: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
## PLAINTIFF JOSHI

97.     As demonstrated above, during her employment with GIMS and Dr. Sabih, Sabih engaged in fraudulent billing practices such as writing notes on patients he had not seen.

98.     The Kansas Legislature has stated that "It is declared the public policy of the state of Kansas that the provision of health care is essential to the well-being of its citizens as is the achievement of an acceptable quality of health care." K.S.A. § 65-4914.

99.     The provision of adequate health care in the State of Kansas requires professional competence on behalf of medical providers.

100.    Kansas law defines "professional incompetency" to include "conduct likely to deceive, defraud, or harm the public" (K.S.A. § 65-2837(a)(12)), the "use of any false, fraudulent or deceptive statement in any document connected with the practice of the healing arts including the intentional falsifying or fraudulent altering of a patient or medical care facility record"

17

(K.S.A. § 65-2837(a)(17)), and "Failure to keep written medical records that accurately describe the services rendered to the patient" (K.S.A. § 65-2837(a)(25)).

101.    Kansas law further prohibits medical providers from using false records to make false claims for payment of state funds or to permit false statements to be used to receive state funds. K.S.A. § 75-7503(a)(1) and (2).

102.    The false records GIMS and Dr. Sabih created and maintained were used to support claims to the State of Kansas for payment of state funds, including Medicaid payments on behalf of GIMS patients.

103.    Plaintiff Joshi accurately and in good faith reported to Dr. Sabih and hospital risk management that Sabih had engaged in a practice that was contrary to the public policy of the state of Kansas in that wrote a note on a patient's chart as though he had seen the patient, when he had not done so.

104.    Plaintiff Joshi made her reports in good faith based on a concern regarding the wrongful activity reported and not for malice, spite, jealousy, or personal gain.

105.    Defendants were aware of Plaintiff Joshi's reports of improper activities.

106.    Defendants terminated Plaintiff Joshi's employment on April 12, 2020 in retaliation for making the reports described above.

107.    Defendant's actions have directly and proximately caused Plaintiff Joshi substantial economic loss, damage to her career and professional reputation, humiliation, mental stress, anxiety, pain, and suffering.

WHEREFORE, Plaintiff Joshi prays for a finding in her favor on Count VII of her Complaint against the Defendants for an award of damages, including back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension

benefits, Social Security contributions, front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life; and for such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all claims in their Complaint that may properly be submitted to a jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Kansas City, Kansas as the place of trial of this matter.

Respectfully submitted,

*/s/ Mark V. Dugan*

**DUGAN SCHLOZMAN LLC**
Mark V. Dugan              KS Bar No.     23897
mark@duganschlozman.com
Heather J. Schlozman       KS Bar No.     23869
heather@duganschlozman.com
8826 Santa Fe, Suite 307
Overland Park, KS 66212

*/s/ Robert K. Collins*

**COLLINS LAW OFFICE, LLC**
Robert K. Collins          KS Bar No.     22675
robert@collinslegal.com
P.O. Box 4786
Olathe, KS  66063
Ph. (913) 538-7472

**Counsel for Plaintiffs**